Case number 12-3036, United States of America v. Aumbrey Winstead, also known as Andre Winstead, Appellant. Ms. Wright for the Appellant, Ms. Disabled for the Affiliate. Good morning. May it please the Court, Lisa Wright representing Mr. Winstead. I'd like to reserve three minutes for rebuttal. We've made several important sensing arguments that I want to reach, but to start I want to make clear that at a minimum Mr. Winstead's entitled to a remand on his claims that counsel was ineffective in both misadvising him with respect to the decision to go to trial and also in several respects he was deficient during the trial, including, I think most notably, in advising Mr. Winstead as to his decision to take the stand. The record is clear that he did not realize and did not advise Mr. Winstead that he would be opening the door to the devastating Savannah Street evidence if he took the stand. I don't know how the argument was ineffective at sentencing. Yes, and also at sentencing, regardless of any trial errors, he must be resentenced. And I hope it's clear from all the record that we cite that we quoted at length that Mr. Winstead effectively had no counsel at sentencing and at minimum he's entitled to essentially a de novo resentencing with real counsel. The government doesn't really contest that the record establishes basically a breakdown in the adversarial process at sentencing and that there was multiple deficiencies, not understanding the guideline calculations, misunderstanding the court's discretion to vary on policy grounds, basically abdicating his duty of loyalty and advocacy. The government doesn't really contest these but essentially argues that there's no prejudice, that somehow we can be sure that there was no need for a lawyer because Judge Bates, he had this and he understood everything and he could sort of decide without a lawyer or any advocate whether Mr. Winstead, what the sufficient but not greater than necessary sentence was and tries to argue that this court can determine that the judge would have come to the exact same 360 month sentence, not 359, not 358, but 360 as the sufficient but not greater than sentence, even if counsel had argued for instead of against his client. You also mentioned in passing that the guidelines and the commentary are inconsistent. Correct. So at this new sentencing that we believe clearly needs to take place with comment of counsel, we would ask the court to remand it with directions that he be treated as a non-career offender for two reasons. One, the Stinson argument Your Honor is referencing and also the Henkel sort of decamps offer to sell argument. On the Stinson argument, the plain text is clearly inconsistent of the attempt commentary. It's in conflict with the congressionally approved guideline definition of controlled substance offense. The commission attempts to sort of define the already defined controlled substance offense term by adding crimes that go beyond, quote, such offenses. And that whole thing is not just circular and illogical, but openly expands. It doesn't clarify. It expands the guideline definition. And we cite to the Fields case in this court that the government doesn't address as a Stinson case where a guideline was similarly found non-authoritative. Also, they don't talk at all about the Supreme Court's decision in James where the court said that attempted burglary is not burglary and likewise here attempted distribution is not distribution. And in James, although that was an ACCA case, the court actually took a side note to talk about the commentary that we're talking about right here and makes clear in its decision that it believes that the commission was interpreting the residual clause of the crime of violence definition when it put this commentary in place. The government argues that on a plain error scope of review that this issue should not overturn the sentencing because five circuit courts have concluded that the commentary is a reasonable interpretation of a guideline. You do suggest in your brief that's inconsistent with some of the logic of our prior opinions, most notably Glover. And Joaquin. Yes, and Joaquin. And I noted Glover was favorably referred to by almost all justices in recent Supreme Court arguments. Okay. Well, yes, I think that this court's made clear that based just on text, it doesn't need to be a case that sort of has exact facts or whatever on point. And we also, frankly, the government's cases don't really, I think we demonstrated in our reply brief, don't really confront the argument we're talking about. The closest they come is the Lange case that sort of tries to reverse engineer some explanation. But they do argue that five circuits have come out contrary. Yes, they do. So how can that be plain error? Well, under Joaquin and Glover, this court can say, we see it differently. It's plain to us, you know, based on the text. I see. That's exactly what happened in Joaquin and also what happened in Glover, that the court looked at the text and said, it's plain. We're sorry these other circuits don't see it. And I'd also note that, frankly— Isn't there a way in which you connect two of your arguments? Because if the counsel had raised this point, if we were to agree with you that the sentencing commentary is inconsistent with the guideline, but was concerned about whether or not that's plain error, given five circuits the other way, doesn't it also raise the question whether or not that issue should have been raised by counsel? And the fact that he did not raise it as counsel is an indication of inadequate presentation. Correct. And that's exactly what I was about to say, which is that regardless, if the court agrees with us that he needs a de novo resentencing, at that de novo resentencing, this is going to be an issue that's not being reviewed for plainness. It just needs to be decided on the merits. And so we would ask the court to go ahead and remand it. Should we conclude? Is it perfectly legitimate that we would conclude that the commentary and the guidelines are inconsistent? And therefore, that should have been raised? Should have been raised, or I guess just recognizing that there's going to be a de novo resentencing and this is an issue, going ahead and giving the guidance, just as the court I guess sometimes does and says, you know, there's going to be a new trial, so we'll go ahead and address this evidentiary question so we don't have a second trial that gets messed up. And same thing here. This is going to be raised on resentencing, so there's sort of, we would say that the court, if they could reach the merits and not worry about the plainness of it, if it's going to remand it. Now, if it's not going to remand it, then it does need to reach the plainness of it, which, again, we think we can. I guess we cite to Lisbon, and I just want to say, you know, the remedy here is easy. This is easy to fix, and I want to point out also What about the more difficult question, seems to me, whether or not the evidence of prior crimes should have been introduced? I'm happy to talk about whichever. The Savannah Street, I think, is the most egregious, and as we, as I mentioned at the beginning, I think That's because he testified. Yes. And if we hate to second-guess counsel on tactical decisions, what about the introduction of the marijuana distribution and the cocaine distribution? Aren't they too stale under our precedent? That's correct. Under Sheffield, it's very clear that they're too old, and What do you think of the government's argument that that staleness is told by the period of time that he's in jail? I have to say, as we say in our reply, the only case that really gives any explanation of that sort of relies on a kind of a propensity kind of theory, that, like, he doesn't get credit for not doing it, not having the propensity to do this again, because he's locked up and can't do it. And I think the better argument is that actually there's more distance and more remoteness when someone's off the street than there is when they're on the street. And the legitimate purposes of this are to show the familiarity with the drug market, et cetera, those sorts of things. And while you're in jail, your familiarity with the drug market is dissipating faster than when you're on the street, presumably. And the government's argument doesn't make a lot of sense, because something's either stale or it isn't. And I think under their theory, the staleness would sort of depend on whether you had resisted temptation recently. Which is really a propensity question. It is a propensity question. Yeah, well, there's an awful lot of confusion. Yes, there is. The truth of the matter, on the one hand, we're not allowed to produce prior crimes to show bad character, and yet knowledge, intent, and a number of other factors almost suggest that you can show prior crimes of the same kind, which really is a propensity question. There's a lot of confusion. It's a very thin line, and it's hard to kind of balance it in your mind. But I think here, even... All right, suppose you were right about that. Isn't there enough evidence anyway? There's enough evidence. I guess that's not really that the harmless analysis isn't sort of whether there's enough left, but whether we can be sure the jury's verdict wasn't impacted by this evidence. And Sheffield, the factors that made Sheffield believe it was harmless, none of them are present here. Specifically, they emphasize that it was just this sort of one line that kind of breezed past the jury, whereas here there was this sort of compelling, dramatic evidence, which about the specific factual propers and transcript where, as to the quid cocaine, thanks to counsel's failure to object, even though he was invited to, the jury finds out that, in fact, there's this fight with the police. I mean, it's just terribly dramatic and riveting, which is exactly what Sheffield said it was not. Also, of course, there was no... Sheffield court quoted at length all three... Sheffield is just one case from which you can distinguish whether it was harmless or not. The question is how powerful is the evidence here? And as you've already pointed out and said in your opening, the evidence about the Savannah search was devastating, and that... Now, maybe they're... I understand your argument about ineffective assistance, but nonetheless, he was crossed, he took the stand, he was crossed, there was no objection about the cross, and then they were entitled to put in the evidence that they did. So now you have devastating evidence. We have cases that say if the judge makes a mistake about 404B, but there's other evidence that appropriately comes in under 404B that can make it harmless. We have him testifying in, I must say, maybe the most incredible testimony possible. You have civilian witnesses who have absolutely nothing to gain by fingering this guy, other than the risk of being hurt by somebody who's got a gun. You have him testifying that the voice on the tape isn't his and he doesn't remember the conversation when he admits it's his prison ID number, he's the guy who's bray, the driver is George. It just seems there'd be no reason for the jury to believe him after that. So I don't actually see why this isn't a typical harmless error case where the evidence is powerful against him. You have two officers testifying about the drugs in the cargo pocket. I understand you have an argument about really a small inconsistency about the moment at which they found it. But again, maybe it's ineffective assistance. This isn't mentioned in the closing argument at all, that inconsistency that you're talking about. I didn't notice the inconsistency when I read it. Now, after you point it out, I could see, well, maybe some juror could think it was an inconsistency. But when the defense counsel doesn't even mention it, it's very unlikely. So now you've got two officers testifying that they found the drugs on him without any challenge by defense counsel. You have the Savannah case. You have him lying about the prison conversation about hiding the guns. And you have two civilian witnesses. I don't know if it seems like a mighty powerful case compared to some, as you point out, old marijuana distribution. The prohibitiveness and the prejudice obviously goes both ways. But I would say first about the civilian witnesses, that really just goes solely to the gun, and we're not contesting. But they also go to his credibility. They go to whether he's a liar. And when he testifies that he didn't have the drugs on him, it wasn't his gun, it was the other guy's gun, he wasn't drunk, all these things, all of which turn out not to be true. Why should anybody believe him about anything? And if they don't believe him about anything, then he has no defense at all. Well, he still has the same reasonable doubt arguments about the drugs. What's the reasonable doubt argument? Assuming that you don't get that the jury doesn't believe his story that they put the drugs on him. Then you have two officers testifying about finding drugs in the exact same spot. This bill, I understand this supports your ineffective assistance. Yes, it does. But let me just say this. I just want to say this one point on how compared to the Savannah Street, I just want to point out that turning the government's argument around, they made a big point of why do you need all three of these, and they argued that each one presented unique prejudice. And because the quid cocaine was like the exact same situation, it was like 23 zips of crack, 25 zips of crack, possession with intent to distribute. The marijuana was the only one where they actually had him actually distributing. So the prejudice that, I mean, yeah, the probativeness that they pointed to, that why they needed each one, likewise flips around and is our prejudice. Yeah, if we actually believe them. I mean, each side makes the strongest argument they can about why they need the information. I don't even think that Savannah is really a 404B. You find exact, very similar packaging that he has on him and that's in the apartment. That's intrinsic evidence. That's not extrinsic evidence. That shows you've got the, if the jury believes it, that he has the same packaging in his pants that he has in the apartment. That's pretty good evidence. And it's not 404B evidence. It's almost simultaneous. Yeah, it's the three days before. I'm not sure that it's directly, though, goes to whether he's possessing with intent to distribute. It's an inference, yes, I agree. It doesn't necessarily have to prove everything, but it does help prove the possessing part regardless of the intent part. Well, let me say that aside from these 404B arguments and the ineffectiveness about the Savannah Street, there are other ineffectiveness arguments that are all going to combine together. Our typical position is under Rashad that we remand, and that's all you're asking for is a typical Rashad remand. Correct. Let me just ask about the sentencing for one second. Yes. So the question is whether this language, controlled substance offense that includes distribution, also includes attempted, right? That's available, whether attempts are included with it. Yes. And the question is whether it's plainly inconsistent with those words to include attempts. So let me just ask a few things that are bothering me on the question of whether it's plainly inconsistent. So 21 U.S.C. 802, which are the definitions for 21 U.S. Code, defined distribute as to deliver and then defines deliver as attempted transfer. That sounds like Congress at least, at least in a very close, not exactly the same, but very close, saw an attempt as the same thing as a transfer, which is the same thing as distribution. So if Congress could think it was and define it that way, it doesn't seem to me unreasonable or plainly inconsistent for the Sentencing Commission to in its, of whoever wrote the commentary, to be interpreting the same sentencing commission guideline that way. Why is that wrong? Well, the government does not actually make that argument, nor do any of the, I don't think any of the cases that they point to, which don't actually even address this argument. I think the way that they write the, I mean, I guess I would say we are looking at a, sort of a generic or a common sense meaning of the word distribute. And I think that they need to, if that's what they think, they need to say that just as Congress said it in the 802 you're talking about. They need to say it and have it be congressionally approved. I mean, if that's what it's going to include, it needs to be, the guideline needs to define it that way, not, Congress is not approving attempts in this situation. It's not like the word distribute, like everyone would automatically think it meant that. Well, wouldn't you think it meant that if you as a member of Congress had, had before you, you know, you have a statute which you've already defined it that way? Well, Congress has defined these same terms, I'm not saying distribute, but all these terms, they do lots of different definitions of some very similar concepts. I don't think just that fact that they. And what do you think about the fact that Congress in 846 says any person who attempts gets the same crime as any person who does the substantive offense? And then in the guidelines themselves, there is a guideline, 2X1.1, which says you get the same base offense level for attempting an offense as you do for the substantive offense. Doesn't that all indicate a, you know, sort of a practice, a pattern and practice, as it were, of treating attempts and substantive offenses as the same? As you point out, counsel, this is not an argument presented by the government. Correct. And I would say that James sort of rejects what Your Honor is saying, because it's saying we don't assume attempted burglary is not the enumerated offense of burglary. It would be easy for the Commission to say what Your Honor is saying, and then commission. But doesn't that require some, in that case, that there be a violence aspect to it? Isn't that the sort of point of why that's not included in burglary? I think that he's just saying we can't. The question was whether attempted burglary qualified under ACCA, and he kind of went there saying, like, okay, it's not an enumerated offense. It doesn't involve force. So it's clear the question was under the residual clause. And one other thing, I haven't had, pardon? Force, I'm sorry, not violence. Force. You were right. Yeah, yeah, yeah. But I do want to point out that as to what the Commission is thinking, I think we know what the Commission was thinking, because originally, as I point out in the brief, when this guideline was put in place originally in 1987, it did have sort of a residual clause.  It found that these lists of enumerated statutes don't include inchoate offenses. But then it said, and similar offenses. At the same time, it put this commentary in. That commentary was interpreting the phrase and similar offenses and saying that that includes these inchoate offenses. Well, when the Commission then replaced that list of enumerated offenses with a residual clause with the current definition, there's no longer a basis. We know what the basis was. And then they took it away by taking away the and similar offenses clause. So now it is just hanging out there. It has no freestanding authority. It can only be interpreting something. And the way they reworded it, they could have easily done it a different way and put it past Congress, but they didn't. It would be easy to do so now. I would point to the contrast this statute with in Alexander when the Court dealt with the ACCA definition where the word involving didn't say prohibits distribution. It says prohibits offenses involving distribution and manufacture. The Court relied heavily on the word involving to say that includes because the attempts and whatnot. And I also would point to the felony drug offense definition that triggers the 851 notice. In that definition, the wording is, quote, an offense that prohibits or restricts conduct relating to narcotic drugs. So those sorts of language, yes, can include attempt. And I think the Court, in relying so heavily on the word involving, the inference is that without that word, and under Janes, that's not included. And Price and Fields all support us on that, and Lisbon as well supports us on that. Does the fact that they, after our opinion, then repromulgated the commentary to make clear that attempts were considered? I'm sorry? The fact that I can't remember what the year is, where they repromulgated the commentary to add the additional section to make clear that attempts were committed, does that matter? You mean when they moved it from, like, Note 2 to Note 1? I think the note is always read the same. So they, in 1995, when they were responding to our decision in Price, they repromulgated Application Note 1. Right, they added background. Exactly. Yes. The statutory citation that we said was missing. Yes. All that did is correct the authority problem, to do, to basically, it's funny, actually, because it's the authority to broaden the guideline. The court's saying they can't do this, but the court did not address the Stinson argument. It was before Stinson. But I don't think, all that's happening there is this court, and I think one other court, had recognized that 994-H doesn't include inchoate crimes, and the Commission just said, oh, okay, in that case, we're doing it under our general authority. But nobody made the argument that, oh, you don't have authority under your general authority either. Okay. Thank you. Okay. If there's no further questions, I've preserved my time. Thank you. Good morning. May it please the Court, David Stable on behalf of the United States. In response to Judge Garland, your question, this is a very strong case, and the other crimes evidence, admission of this evidence did not prejudice the appellant. It's important to remember, of course, that the court was presented with four pieces of other crimes evidence. Three are the crude convictions with the underlying facts, and Savannah Street, which appellant doesn't even challenge on appeal, was properly admitted. The court admitted all four pieces of these evidence, and it was only two months later when the government said, you know, Your Honor, we don't think we're going to use the Savannah Street evidence in the government's case in chief. Appellant never came back and said, oh, by the way, let's redo the 403 balancing, because we think now that the totality of the circumstances are different. We ask you to revisit it. That never happened. I agree with you. Your case is strong, even without the introduction of the two prior crimes. But the argument that aren't we bound by our prior case to say that the introduction of those two put aside the question of whether it's prejudicial or whether there's sufficient other evidence. Aren't we bound by our prior case to say that's too stale? Well, appellant would have this court take from Sheffield that a conviction that's 10 years old is stale when it goes to knowledge and intent, and have that be a bright line rule. But that's not what Sheffield says. There are a couple of problems with Sheffield. First of all, Sheffield was a case in which the government only put in the fact of the conviction didn't elucidate any of the underlying facts. Which way does that cut? Well, it helps us. It might hurt on the prejudice argument potentially, but it helps certainly helps us on the merits argument, particularly the way the government put it in here. We put in the facts with transcripts. Could you explain to me why an old conviction is less stale if a defendant is in jail for part of that period of time? I don't understand that. It's difficult to understand in part because my second complaint about Sheffield is that Sheffield never says why a conviction grows stale in the first place. In fact, Judge Bates said when it comes to knowledge, staleness really isn't that big of a problem. I think Judge Bates was thinking, and I think many judges think that knowing what drugs are. So Judge Bates didn't think Sheffield made much sense.  this was before Sheffield, Your Honor. And the knowing that what crack is, knowing where to find crack, knowing how to sell crack. A lot of people would say it's like riding a bike. You don't just forget how to ride a bike. I mean, and so Sheffield was a case in which the government just put in the there was, there was no. Leave aside distinguishing or explaining or criticizing Sheffield. I'm interested in the sort of direct answer to Judge Silverman's question. I'm sorry, Your Honor. I was trying to get. So if it's something that happened more than 10 years ago, talk about with a different drug. How does that give you a knowledge of the drug that we're talking about now? I think if a person is out on the street for 10 years, has not been arrested or convicted of a crime, there's no other crimes behavior. It certainly suggests perhaps. It doesn't suggest you forgot how to do it. Handle drugs. What it suggests is he may have lost the propensity to commit a crime, which is so puzzling because that's not supposed to be something we consider. That would be one way of looking at it, Your Honor. And I understand what the court is saying. But in another way to view, that would be the appellant has, in effect, turned his back on the life of crime and so has forgotten and chosen to forget a lot of what he used to know. A person in jail is going to be much less likely to do so. Was the fact that he was in jail submitted to the jury? Yes. Oh, to the jury. During that period? I'm sorry, to the jury? Part of your argument is that he was in jail during a significant part of the time between the original offense and the current offense, right? Yes. Was the jury told that? No. The answer is no. So that being the case, the question is really for the jury, right, as to whether this is probative or not. If the jury doesn't know this, that he's been in jail during this period, how does it matter to the jury, the difference between whether he's in jail or not in jail? I understand it to be a question for the judge as a gatekeeper trying to decide the relevance, and he's looking at the relevance of this, whether it's appropriate to go to the jury. Of course, this is a fact that he's not going to tell the jury, but nonetheless... How probative it is, the jury has no way of measuring how probative it is. Because the jury doesn't know whether it's because he was in jail or wasn't in jail. It doesn't know whether his intent has dissipated, whether his knowledge has dissipated. Of course, the introduction of the proposition that he was in jail might be prejudiced. Yeah, of course you can't introduce that information. That's prejudicial in itself. Right, that obviously can't be introduced. I understand the court's point. It's not something that the jury would be in a position to assess, I guess that's true, Your Honor. Certainly, the judge is making a decision for the jury about whether it's fair for them to assess it, whether this evidence is probative. That's the judge's role as the gatekeeper to screen out unfairly prejudicial information. Leave aside the knowledge thing. How does the intent, how is this relevant? An offense for which you've been in jail for part of the time, why does that matter with respect to intent? I'm not saying it doesn't, I just want to hear what the rationale is. Well, certainly the 2002 offense was an actual distribution. It was a by-bust case where the appellant actually distributed, sold marijuana to an officer. So it was particularly probative of the distribution. The 1998 offense was 23 Ziploc bags of crack cocaine. It was the same drug, and it was actual possession. And so to the extent he intended to possess it then, which he admitted that he did, he also was probative that he intended to distribute the 25 Ziploc bags of crack cocaine in his pocket in 2010. That's awful close to propensity. And knowledge looks a little peculiar to me because I can't imagine a discussion in a jailhouse would ignore the techniques of distributing drugs. Well, that is part of our point, Your Honor. I can't imagine a place where there would be more extensive conversation of exactly this issue. That is exactly our point, that you're less likely to forget what crack is in jail than you would be leading a life as an honest citizen on the streets. And... Can you go to the sentencing issue for a minute, and in particular the relationship between attempt and the substantive offense? Yes, Your Honor. The trial court didn't plainly err. This court... Let's suppose we were to conclude, let's just suppose we were to conclude that it's likely, maybe even more than likely, that attempt is not included within the guideline. Assuming argument, all right? Yes, Your Honor. Would that not be almost per se evidence of ineffective assistance of counsel not to raise that issue? After all, it's true that five circuits had decided the other way, but one, the Eighth Circuit, had an en banc, in which there was a strong dissent. So this was obviously a potential major legal issue. It's hard... No, I wouldn't think so, Your Honor, because, yes, the existence of these five opinions in different circuits would put counsel on notice that it was an issue. I think that's the court's point. But the fact that every circuit has ruled against him suggests that this is not a meritorious issue. And certainly Judge Bates wouldn't have a reason to think that this was a meritorious issue. There isn't any reason to think it's... Because it's not just a question of perhaps being broader than the guideline. It's a question of being plainly inconsistent with the guideline. And it's not plainly inconsistent with the guideline. The Eleventh Circuit... This court said, in 2003, in the Norman Williams case, faced a very analogous situation as to whether attempt burglary was within the guideline definition for a crime of violence. And this wasn't relying on the residual clause or the force clause. And this court said, on the face of it, attempted burglary thus falls within the definition of crime of violence. Burglary is such a crime, and Application Note 1 tells us attempts to commit a crime of violence are also such crimes. What do we do with James? What's your answer to her argument about James? On attempt burglary. Your Honor... Some of the cases that we relied on, Seventh Circuit and Rapp, looked at James, which is not a controlled substance offense case, looked at James... You're just talking about attempt burglary, so that's why I'm asking. I understand, Your Honor. I wish I had a better... The answer that I have, the best answer I have for you right now, is that these other circuits, particularly the Seventh Circuit and Rapp, looked at James and felt and said that James did not support our reading that it was plainly inconsistent. In the Eleventh Circuit, the Eleventh Circuit in Lange looked at the definition... that when one considers the effectiveness of counsel, that one can be very reluctant to second-guess tactical decisions that lawyers make during trial, whether so-and-so should testify or not, and at the same time, be particularly zealous in asking the question of whether or not a legal argument was ignored, and a legal argument that would make an enormous difference in this defendant's years in prison. Because if you take... If you conclude the word attempt is not included within the guidelines and therefore is inconsistent with the guidelines, what is the difference in the amount of years this defendant would face? Well, the guidelines shifts by a number of years, Your Honor. What is the number? I don't have the number in front of me, but I think it goes from 360 to life to something in the 200s, Your Honor, so something on the order of 100 months would be my best estimate at this point. Over 10 years. 100 months, I don't know if that counts correctly. A little less than 10 years. Almost 10 years. That's an enormous consequence. Well, it's a long-shot argument that would potentially... I don't think it's a long-shot argument. Suppose I think it's a winning argument. Does that mean I would conclude necessarily it was ineffective assistance of counsel? Now, that doesn't mean, of course, that the district judge made plain error. It means that if the issue had been raised before the district judge, the review would be strictly whether it was an error or not. I understand, Your Honor. And if I conclude that it is an error, doesn't that lead me to inexorably conclude there was ineffective assistance of counsel? I haven't read a case that said counsel has an obligation to raise every possible legal argument, even ones that might possibly be meritorious, even though every circuit to consider has rejected that argument. That seems to me to be a high bar. If one circuit had come out the other way, would your answer be different? It would certainly be a stronger case, but I... Would your answer be different? No, I don't think so. So two circuits, that still wouldn't be different? I don't have a bright-line rule for when this meritorious argument has to be ruled, but certainly lawyers miss arguments all the time. And it is true when the Eighth Circuit was en banc and there was a strong dissent, right? I don't recall a dissent, Your Honor. I remember the en banc decision saying, yes, that... You don't read the dissents. They're not as good a guide to the rule of law. That's what they tell us, Your Honor. I do occasionally read the dissents. I certainly read Judge Sentel's concurrence in Sheffield in which he said there were four judges that considered this matter and two of them thought this was a completely reasonable balancing of the circumstances. Do you really realize that our test under Rashad for sending back an ineffective assistance claim is extremely low? Absolutely. I mean, are you really arguing that there is not any ineffective assistance claim here at all that deserves to be sent back on remand? I'm sorry, Your Honor. I didn't understand Judge Silverman to be asking me that question. I thought he was asking me about the merits of deficiency. I know, but I thought you weren't able to answer other than citing an unchallenging... pointing out dissents aren't the law. I know you weren't talking about Judge Silverman's dissents, but as a general matter. I'm sorry, Your Honor. No. The... Appellant clarified with respect to the plea proffer, the advice of counsel with respect to whether or not he should plead to the indictment. He's now saying that he should have pled to the indictment, and I think that he has, under Lafleur, made out enough under Rashad that that would be referred. We do think that, although we didn't challenge vigorously some of the deficiency arguments under Rashad, because we don't think we can conclusively show that counsel is not deficient, that there are strong prejudice arguments, and we're relying principally on the prejudice arguments for most of the ineffectiveness claims. I would... The possible exception to that would be, of course, the advice about whether appellants should have testified. I think it's unfair to counsel to say that he, on this record, that he gave bad advice. What we know is that counsel, that appellant wanted to make certain claims that could only be made, arguments that could only be made if he testified. He testified, he just testified really badly by telling an awful lot of lies. He should have sprinkled the truth in more with his lies and had a better chance, but asking the court, obviously, asking the jury to think that it was a coincidence that he urinated in the woods near two guns and the police planted the drugs in his pocket, that was just not going to fly with any jury. And his testimony concerning that phone conversation was absolutely absurd. And accordingly, by the time that appellant got to closing argument, he made the best of it. He chose the best arguments, and he chose not to squander his credibility with some of the ridiculous ones. And so... But I understand that on some of these cases, under Rashad, the appellant does have a good chance for remand on the plea. Other questions? No? Thank you. I'm going to ask the court to affirm. Thank you. We have no time left, I assume. We'll give you another minute. I think on the sentencing, I really just want to say two things. One, the government says that being broader, something that's broader is not necessarily inconsistent. And my answer to that is that when we are talking about something that is called a definition, and says what it means, yes, if it's broader, that is inconsistent. Because the things that aren't in the definition are excluded. And then when you add them in... Expressio unius, exclusio altur. My Latin is not that good, but yes. Well, I don't pronounce it very well either. Nobody knows how to pronounce it. Okay. I don't even try. The second thing I want to say is, I think as far as your question of how much time, if he's not a career offender, I think at one point in the briefs, we may have said it was like 211 to, it was like 151 plus 60, it was like 211 to something. And I realize, I believe that is actually high, because if these two things are not controlled substance offenses, that takes off, I believe, either four or six offense levels from the gun guideline. Because he got enhancements to his non-career gun... How many years from him? I think we're talking about 16 to 17 years. 16 to 17 years if the attempt is not included? Right, if those two... 16 or 17 years? Yes. If neither one of them qualify, I think that, I thought that was too far in the weeds to recalculate this last night, so I apologize I didn't do it. But I think that it's approximately maybe like 110 months plus 60. That's my memory. Something in that range. So that's, you know, a good 200 to, 190 to 200 months difference. So that's... If there's no further questions... These... Just so I'm clear about the D.C. law on this, these attempts under D.C., these crimes under D.C. law, you say are included within the substance of offense as well, not the offense that includes an attempt? Yeah, well, it defines distribute as being an attempted transfer. It's including an attempted transfer. And there's a case that, you know, if you start to hand it to someone and take it back, that's a completed distribution. So that's the same as the federal one that I just read to you? It is. But still, just the plain text, if you've got an attempt to transfer, that's a double and co-agent. That's a separate question. Yeah, that's a step beyond... Just on the question of whether the commentary is plainly inconsistent or not. Okay, yeah. Okay, thank you. I just want to also say on the decision to testify, you know, I think on remand, Mr. Winstead is going to be able to demonstrate that there was essentially no real advice given that should have been given on the decision to testify. And specifically, I disagree with the government that only... When he says he's doing this based on my advice that this is the only way to make certain arguments, I think that that's actually bad advice because it's incorrect advice because of the things he needed to be made. And also, his failure to advise the defendant, he was completely misunderstood the sentencing exposure. So when he's advising the defendant whether to take the stand, the defendant needs to understand what's at stake and what the state of play is right now. Like, okay, you're going to get convicted on the guns no matter what you do. But don't worry, that's only a 10-year sentence. We have a good, reasonable doubt claim on the guns, the drugs, which if you get up there and tell a ridiculous story, you're going to lose that. And that's 20 years. So it's one thing to roll the dice when you think you have no claim and it's 30 years at stake. But it's another thing to roll the dice. The whole calculus changes if you understand what your exposure is. And it's clear from the sentencing transcript that defense counsel didn't understand. So that's all part of the Rashad problem on the advice about the testimony. And I think on remand he's going to be able to establish that he received horrendous advice in his decision to take the stand. Thank you. Thank you. We'll take the matter under submission.
judges: Garland, Edwards, Silberman